FILED

2009 Nov-02  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JEFF HICKS, on behalf of himself and all others similarly situated, | ) ) ) | |
| PLAINTIFF, | ) ) | |
| vs. | ) | 07:08-CV-0536-LSC |
| MERCEDES-BENZ U.S. INTERNATIONAL, INC., | ) ) ) | |
| DEFENDANT. | ) ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has before it a motion for summary judgment, filed on July 2, 2009, by defendant Mercedes-Benz U.S. International, Inc. ("MBUSI"). (Doc. 57.)  Plaintiff Jeff Hicks ("Plaintiff") sued MBUSI, alleging that MBUSI failed to pay him overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1).  (Doc. 1.)  Discovery now completed, MBUSI has moved for summary judgment.  (Doc. 57.)  The issues raised in MBUSI's motion for summary judgment have been briefed by both parties and are now ripe for decision.   Upon full consideration of the legal arguments and evidence presented, MBUSI's motion will be denied.

II.    Facts.[1]

MBUSI operates an automobile assembly facility located in Vance, Alabama, consisting of various production shops as well as quality, maintenance, and logistics departments. There are 101 production groups at MBUSI, each of which is divided into team members ("TM"s) and team leaders ("TL"s). Each group is headed by a group leader ("GL"). Assistant Managers ("AM"s) manage several groups, and Managers manage whole departments. Managers, AMs, and GLs are classified as "exempt" employees for purposes of the FLSA. These employees are paid on a salary, rather than hourly, basis. TMs and TLs are classified as "non-exempt" and paid on an hourly basis.

Plaintiff began working for MBUSI in January 1997, as a TM in the Paint 2 department. In 1998, Plaintiff was promoted to TL and received a $0.75/hour raise. On July 1, 2004, Plaintiff was promoted to GL, and MBUSI began paying him a yearly salary of $61,700. As GL, Plaintiff heads a group consisting of three lines in Paint 2: Primer E-Coat, E-Coat Sand, and Prime Automation. Plaintiff currently oversees three TLs and 14 TMs. Prior to January 2009, Plaintiff had 4 TLs and 22 TMs in his group.

Before March 2006, GLs were paid overtime for every hour over 40

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

worked in a week.  In March 2006, MBUSI changed its policy so that GLs would not be paid overtime for five hours per week of "casual time." "Casual time" was intended to encompass regular pre- and post-shift activities.  The effect of the new policy was that GLs would not be paid overtime until they had worked over 45 hours in a week.  However, GLs continued to be paid overtime for any hours over 40 if those hours were worked on the weekend.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.

1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Plaintiff contends that the FLSA required MBUSI to pay him overtime for every hour over 40 worked in a week.  Thus, Plaintiff maintains, MBUSI's "casual time" policy violated the FLSA because it denied Plaintiff any overtime premium for the first five hours over 40 worked in a regular workweek.  MBUSI responds that Plaintiff is an "exempt" employee under the FLSA such that the FLSA's overtime requirements do not apply to him.

The FLSA requires generally that employees be paid at least time-and-a-half for all hours over 40 worked in a week.  *See* 29 U.S.C. § 207(a)(1). However, the FLSA exempts from the overtime requirement certain categories of employees, including "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

4

MBUSI contends that Plaintiff is employed in an "executive" capacity and is thus subject to this exemption from the FLSA's overtime requirements.  The so-called "executive exemption" applies to employees (1) who are "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) whose "primary duty" consists of managing "the enterprise in which the employee is employed" or a "customarily recognized department or subdivision" of such enterprise; (3) who "customarily and regularly directs the work of two or more other employees"; AND (4) who is authorized to hire or fire other employees or whose "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1266 (11th Cir. 2008).

The Eleventh Circuit has recognized the Supreme Court's "admonition that courts closely circumscribe the FLSA's exemptions." *Nicholson v. World Bus. Network*, 105 F.3d 1361, 1364 (11th Cir. 1997) (referencing *A.H. Phillips, Inc. V. Walling*, 324 U.S. 490, 493 (1945)).  In determining whether an employee fits within an overtime exemption, the exemption is to be construed "narrowly, against the employer." *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994); *see also Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008).

The employer bears the burden of establishing that an exemption applies. *See Alvarez Perez*, 515 F.3d at 1156.  In considering MBUSI's motion

5

for summary judgment, this Court is mindful that the Eleventh Circuit has rejected a "categorical approach" to determining whether an employee falls within the FLSA's executive exemption.  *See Morgan*, 551 F.3d at 1269; *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details.") Whether an employee qualifies as an exempt executive is necessarily a fact-intensive inquiry.  *Rodriguez*, 518 F.3d at 1264.

Of the four requirements to finding that an employee is an exempt executive, only one is not in dispute as related to Plaintiff.  Both Plaintiff and MBUSI concede that Plaintiff "customarily and regularly directs the work of two or more other employees."  29 C.F.R. § 541.100(a)(3).  While MBUSI maintains that Plaintiff meets all four parts of the regulation, however, Plaintiff contends that he (a) is not paid on a salary basis, (b) does not have management as his "primary duty," and (c) does not have authority to hire or fire other employees, nor are his recommendations as to the hiring, firing, promotion, or advancement of other employees given "particular weight."

A.  Salary Basis.

Although he admits that upon being promoted to GL he was paid $61,700 per year (a rate higher than $455 per week), Plaintiff contends that he was not paid on a "salary basis" because of MBUSI's rules regarding non-

production Fridays.  MBUSI currently does not assemble cars on Fridays.  GLs might be scheduled to work on certain Fridays supervising TMs engaged in non-production activities, such as cleaning the plant.  However, if a GL was not scheduled to work, he would be paid his regular salary only if he either took a paid vacation day or used the Friday Bank.  If he chose the latter option, the hours he did not work on a non-production Friday would be "banked" against future overtime, such that the GL would not receive any overtime premium until he had worked the number of banked hours at the regular rate of compensation.

The regulations explaining "salary basis" state that an employee is not paid on a salary basis "if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.  If the employee is ready, willing and able to work, deductions may not be made for time when work is not available."  29 C.F.R. § 541.602(a).  Plaintiff argues that MBUSI's policy requiring him either to use a vacation day or to "bank" his unworked Friday hours against future overtime amounts to MBUSI taking deductions from Plaintiff's salary for time not worked due to MBUSI rather than to Plaintiff.

The FLSA does not require employers to provide vacation time to their employees.  If an employer chooses to provide paid vacation leave as a benefit to employees, nothing prevents the employer from requiring employees to use some or all of that paid leave on certain days.  The employee is still paid on a "salary basis" within the meaning of the

7

regulations if the employee is paid his full predetermined compensation when he does not work because of his employer's needs rather than his own. *See* 29 C.F.R. § 541.602(a); W&H Opinion Letter FLSA2009-2 (Jan. 14, 2009) (an employer "may direct exempt staff to take vacation or debit their leave bank account..., whether for a full or partial day's absence, provided the employees receive in payment an amount equal to their guaranteed salary") (*quoting* W&H Opinion Letter FLSA2005-41 (Oct. 24, 2005)).  To have required Plaintiff to use his vacation days on non-production Fridays does not mean he was not paid on a "salary basis," so long as he was always paid his predetermined salary.

Similarly, MBUSI's decision to pay an overtime premium in addition to a predetermined salary has no effect on whether a "salary basis" exists.  If MBUSI chooses to provide an overtime premium, it may reduce the number of hours for which the overtime premium is paid without violating the "salary basis" of the exempt employees, *so long as* the exempt employees are always paid their predetermined salary in full.[2]  There appears to be no dispute that Plaintiff received his full salary, even when he used accrued vacation or the Friday Bank to account for time not worked on a non-production Friday. Plaintiff also contends that because MBUSI counted

---

[2] Of course, if Plaintiff is not an exempt employee, MBUSI is required to pay him an overtime premium as required by the FLSA, but its payment or non-payment of overtime has no bearing on the "salary basis" factor as long as any overtime is always in addition to and independent from a predetermined salary, paid in full, of more than $455 per week.  *See* 29 C.F.R. § 541.604(a) ("An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis.").

"hours worked" for purposes of administering the Friday Bank, Plaintiff could not have been paid on a "salary basis." The concept underlying a fixed salary, Plaintiff argues, is that the number of hours worked is irrelevant to the employee's compensation. Any counting of hours worked thus suggests that the employee is, in fact, not paid on a salary basis. Here, Plaintiff confuses the concept of counting hours for purposes of calculating base compensation with counting hours for purposes of providing compensation above and beyond the fixed salary forming the "salary basis." An employee "who is guaranteed at least $455 each week paid on a salary basis" may also receive "additional compensation based on hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a).

Viewing the evidence in the light most favorable to Plaintiff, a reasonable fact-finder could not find that Plaintiff was not paid on a "salary basis" within the meaning of the regulations.

B. Primary Duty.

In order to qualify as an exempt executive, an employee's "primary duty" must be "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2). The determination of an employee's primary duty is a fact-based inquiry, with principal emphasis on "the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). The relative importance of the employee's exempt work, the amount of time

9

spent performing that exempt work, the employee's relative freedom from direct supervision, and the employee's salary compared to his non-exempt co-workers are all factors to be considered in determining the employee's primary duty. *Id.*

Clearly Plaintiff has some management responsibilities. He trains TMs, announces corporate policy changes affecting his team, issues "occurrences" when TMs are absent without an excuse, issues CPRs, conducts performance evaluations, engages in problem solving when defects occur on the line or when there are safety issues on the line, implements countermeasures developed from the problem solving, and is ultimately the one "called on the carpet" if a defect caused by his group makes it out of the Paint shop and into the Assembly shop. Around twelve times a day, Plaintiff walks down the line to feed back a quality issue to the TM responsible for the defect. MBUSI contends that, taken together, these activities and responsibilities constitute Plaintiff's primary duty, i.e. management of his group.

Plaintiff's testimony, however, demonstrates that he also spends a large portion, perhaps the bulk, of every day actually working at the end of his line, quality checking the vehicles coming off the line. He performs this work side-by-side with his TLs. The TLs check one side of the car while Plaintiff checks the other. Either Plaintiff or a TL might feed back a quality issue to a TM, "holler" for a "dent doctor" to fix a defect on the car, or use a sanding pad to fix a paint defect.

10

"Concurrent performance of exempt and nonexempt work" will not make an otherwise exempt employee nonexempt.  29 C.F.R. § 541.106(a). In general, exempt employees themselves will decide when and if to perform exempt duties, and will "remain responsible for the success or failure of the business operations under their management while performing the exempt work."  *Id.*  On the other hand, a non-exempt employee performing exempt work will generally do so only at the express direction of a supervisor or "for defined time periods."  *Id.*

MBUSI maintains that Plaintiff's performance of non-exempt work is sporadic and completely at Plaintiff's own discretion.  For example, when Plaintiff sands out a paint defect, he chooses to do so himself rather than call over the TM who caused the defect because, for that particular defect, Plaintiff determines that it is faster and easier for him to sand it himself. But whether Plaintiff sands a defect himself or directs a TM to sand it is entirely at Plaintiff's discretion.  This argument is persuasive as it pertains to sanding out defects, but sanding out defects is not the only work Plaintiff performs "on the line."

Plaintiff testified that he spends most of his day at a TL station at the end of the line, quality checking vehicles coming off the line.  Unlike his sanding of defects, Plaintiff does not quality check at his own discretion: it is what he is "told to do."  Hicks Dep. At 308.  If work is "directly and closely related" to exempt work, then it is also considered exempt work. 29 C.F.R. § 541.703(a).  Quality checking work may be considered "directly

11

and closely related" to exempt work *if* the quality checking is done "to determine whether [subordinates] are performing their duties properly, and whether the product is satisfactory" *and* "the checking is distinguishable from the work ordinarily performed by a nonexempt inspector." 29 C.F.R. § 541.703(b)(3). A reasonable fact-finder could determine from Plaintiff's testimony that the quality checking work he did was indistinguishable from that done by the non-exempt TLs on his team. Plaintiff testified that he does his quality checking work at the TL station at the end of the line, and that he checks quality on one side of the car while the TLs check quality on the other side. Both he and the TLs are responsible for checking quality and feeding back quality issues to TMs. Hicks Dep. at 308, 325.

Even if a fact-finder determined that Plaintiff's quality checking was indistinguishable from non-exempt work, Plaintiff could still be an exempt employee if non-exempt quality checking was not his primary duty. From Plaintiff's testimony, a reasonable fact-finder could determine that Plaintiff's clearly managerial functions--such as giving performance evaluations, providing training, and problem solving to resolve production and safety issues--constitute his "primary duty." However, it would also be possible for a reasonable fact-finder to determine from Plaintiff's testimony that quality-checking and feeding back defects on the line are Plaintiff's primary duties.

Both Plaintiff and MBUSI rely on Plaintiff's deposition testimony in making their arguments for and against summary judgment. But they draw

12

different conclusions, from that same testimony, regarding how Plaintiff spends the majority of his time at work and how "important" his clearly managerial functions are in comparison to his non-exempt functions.

Because there is a genuine issue of fact as to whether Plaintiff's quality-checking activities are qualitatively distinct from those of his non-exempt TLs, how much of Plaintiff's time he spends performing exempt versus non-exempt work, and how important Plaintiff's exempt functions are relative to his non-exempt functions, summary judgment is inappropriate on the "primary duty" prong of the executive exemption test.

C.    Weight Given Recommendations Regarding Other Employees.

The final prong of the executive exemption test asks whether the employee has the authority to hire or fire or whether his recommendations regarding the status of other employees (e.g. hiring, firing, promotion) are given "particular weight." *See* 29 C.F.R. § 541.100(a)(4).  It is undisputed that Plaintiff does not have the authority to hire or fire other MBUSI employees.  MBUSI contends, however, that Plaintiff's recommendations regarding the employees on his team are given particular weight.  Plaintiff disagrees.

Plaintiff has the authority and the responsibility to discipline employees by issuing Corrective Performance Reviews ("CPR"s).  In the past, Plaintiff has issued both Level I and Level II CPRs to TMs whom he supervises.  Under MBUSI's written policies, TMs are ineligible for promotion

or lateral transfer if they have any active CPRs.  *See* Jones Decl., Ex. 3.
Plaintiff argues that because all written CPRs are subject to approval by
higher-level managers, Plaintiff's input in issuing such CPRs carries no
particular weight.  However, Plaintiff remains responsible for initiating and
issuing CPRs in the first instance, and Plaintiff has produced no evidence
that any CPR he has issued has been overturned.  Further, MBUSI's written
policies require Plaintiff's approval before any level CPR can be issued and
before any employee he supervises can be terminated.  *See* Jones Decl., Ex.
2.[3]

　　　Plaintiff also gives Performance Evaluations ("PE"s) to the TMs in his
group.  As part of the PE process, Plaintiff evaluates the performance of his
TMs in various areas.   Plaintiff also has the authority to recommend
employees for advancement.   According to MBUSI's written policies, an
employee is ineligible for promotion to TL or GL if he has an "N" (i.e.,
nonsatisfactory) on his PE in any area other than attendance.   To be
promoted, the employee must also have a "Potential Appraisal," which is

---

[3] Plaintiff suggests that he generally issues CPRs only as a rote discipline for three unexcused absences by a TM (i.e. that he exercises minimal independent discretion or authority in his issuance of CPRs).   However, MBUSI's policies provide that CPRs are to be issued for a wide range of unacceptable or inappropriate behavior by TMs, only one example of which is "excessive absences."  Other examples include "insubordination; willful failure to follow instructions"; "unauthorized use of materials, tools, or equipment"; and "failure to maintain production/quality standards or to follow standard operating procedures."  *See* Jones Decl. Ex. 2.  Plaintiff testified that he very rarely issues CPRs because his TMs rarely require discipline.  *See* Hicks Dep. at 265.  But it remains his responsibility to issue CPRs for a wide range of misbehavior and performance failure.  The fact that he has a "good group" does not impact the weight accorded his disciplinary decisions under company policy.

the GL's assessment of the employee's readiness for promotion.  *See* Jones Decl., para. 15; Jones Decl., Ex. 3.  Plaintiff argues that because his PEs must be approved by higher-level managers and because those managers have occasionally made changes to his PEs, his input is not given particular weight.   Again, though, Plaintiff is the one initially responsible for completing the PEs, and he has produced no evidence that any recommendation for promotion given in his PEs has ever been overturned.

Given the evidence relied on by both parties, and viewing that evidence in the light most favorable to Plaintiff, a reasonable fact-finder could not find that no "particular weight" was given to Plaintiff's recommendations regarding the promotion of employees in his group.

The Court thus finds in favor of the Defendant on the "salary basis" and "hiring/firing" prongs of the executive exemption test, but finds that a genuine issue of fact exists as to the "primary duty" prong.

V.     Conclusion.

Having considered Plaintiff's allegations, it is apparent to this Court that the evidence is sufficient to create a jury question as to whether Plaintiff's primary duty is management of a recognized subdivision of MBUSI. Therefore, MBUSI's motion for summary judgment is due to be denied.  A separate order will be entered.

Done this 2nd day of November 2009.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE