FILED
2012 Jan-11  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **JEFF HICKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **vs.** | ) | **7:08-cv-00536-LSC** |
| | ) | |
| **MERCEDES-BENZ U.S.** | ) | |
| **INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

| | | |
|---|---|---|
| **GRALYN LAWSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **7:09-cv-01157-LSC** |
| **MERCEDES-BENZ U.S.** | ) | |
| **INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MERCEDES-BENZ U.S. INTERNATIONAL, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT AS TO PLAINTIFFS WHO ARE EXEMPT PURSUANT TO THE EXECUTIVE, ADMINISTRATIVE AND COMBINATION EXEMPTIONS

Respectfully submitted:

Michael L. Lucas (LUC004)
Ashley H. Hattaway (HAT007)
BURR & FORMAN LLP
3400 Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama 35203
(205) 251-3000

January 11, 2012

Attorneys for Defendant
Mercedes-Benz U.S. International,
Inc. (MBUSI)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     THE SUMMARY JUDGMENT STANDARD ........................................3

II.    PLAINTIFFS' RESPONSES TO MBUSI'S FACTS ................................4

III.   MBUSI'S RESPONSES TO PLAINTIFFS' ADDITIONAL FACTS ........9

IV.   ARGUMENT........................................................................................ 10

    A.    Plaintiffs Have Not Presented Evidence That Disputes That Price And Fillmore Are Exempt Executives ................................. 11

          1.    Management Is The Plaintiffs' Most Important Duty .......... 11

          2.    Plaintiffs' Main Argument That They Are Not Managers Because They Do Not Have Unfettered Discretion Is Contrary To The Law And Facts.................... 16

          3.    Plaintiffs' Argument That The GLs Are Not Paid On A Salary Basis Is Contrary To This Court's Prior Ruling And The Law ...................................................................... 22

          4.    Plaintiffs' Argument That A "Group" At MBUSI Is Not A Customarily Recognized Department Or Subdivision Has No Merit ................................................. 25

          5.    There Is No Disputed Issue About The Weight Given To GLs' Recommendations On Promotions For TLs And TMs ...................................................................... 26

    B.    When Fillmore And Price Have Performed Exempt Administrative Duties They Also Were Exempt Under The Administrative Exemption ........................................................... 28

    C.    The Combination Exemption Also Applies to Fillmore ............... 35

    D.    Dismissal Of A Plaintiffs' Claim Is A Final Judgment ................. 36

V.     CONCLUSION.......................................................................... 38

Certificate of Service ............................................................. 39

Defendant Mercedes-Benz U.S. International, Inc. ("MBUSI") submits this Reply Brief In Support Of Its Motion For Final Summary Judgment As To Plaintiffs Who Are Exempt Pursuant To The Executive, Administrative and Combination Exemptions.  In its Motion, MBUSI requested that the Court dismiss the claims of plaintiffs Michael Price and Don Fillmore because they meet the requirements of the executive, administrative and/or combination exemptions.

As a GL, Fillmore has been exempt pursuant to the executive exemption because his primary duty has been to mange the TMs in his groups.  Since working as a GL in the Audit area (2009 to present), in addition to directing his group, Fillmore has spent time preparing reports related to his group's activities in auditing cars which are used by MBUSI to address quality issues.  Thus, since that time, Fillmore also has been exempt under the administrative exemption and/or the combination exemption.

For most of his time as a GL, Price has been an exempt executive whose primary duty is to manage his TMs.  From June 2009 to the middle of 2010, Price worked as a GL on the 166 Project Team and was in charge of reviewing equipment that was to be used in producing the new model to see if it was feasible for TMs to use and to provide input into other pre-production planning.  Thus, during that time, Price was exempt under the administrative exemption.

Plaintiffs' response to MBUSI's assertion that Price and Fillmore have been exempt pursuant to the executive exemption is the same as for the other plaintiffs. They argue that plaintiffs are non-exempt working foreman; that they are not managers because they do not have unfettered discretion; that they are not paid on a salary basis; that a group is not a recognized subdivision; and that plaintiffs' recommendations regarding changes in TM job status do not carry particular weight.   As shown in MBUSI's previous briefs, these arguments have no merit.

Plaintiffs also cite to an alleged quote by Price that "I was told [by Vice President Phil Johnson] that they didn't pay me to have my ass in the chair [and that h]e wanted me in the last station checking quality coming off that line," but the alleged quote is made up - not existing in the deposition.  Moreover, plaintiffs fail to include the whole story told by Price in his deposition which is that an alleged instruction to check quality was given to him in March, 2006; that Price left that line in 2007; that he was instructed to walk throughout his group and observe the performance of his TMs and TLs; that he spent most of his time walking the line, observing TMs and TLs and addressing TM issues; and that no matter what he was doing he was accountable for the performance of his group.  The plaintiffs also fail to dispute that Price admitted that his primary responsibility (except for a brief period on the 166 Project Team) has been to observe the work of the TMs and ensure they are complying with the company policies and standards.

2

Plaintiffs' argument in regard to the administrative exemption is that it is inapplicable to Price and Fillmore because their administrative duties related to production and they did not exercise independent judgment and discretion. Plaintiffs' argument is not supported by the law or the facts, and the record shows that Price and Fillmore performed office or non-manual work directly related to the management or general business operations of MBUSI and that they exercised discretion and independent judgment while doing so.

Plaintiffs' only argument in opposition to the application of the combination exemption is that it does not apply because Price and Fillmore allegedly do not meet the executive or administrative tests, but that argument is a complete misunderstanding of the exemption.  The law is clear that the combination exemption can apply when neither the executive or administrative duty tests are met.  In other words, plaintiffs have presented no argument to this Court that would warrant the denial of MBUSI's Motion, and summary judgment should be granted.

## I.     <u>THE SUMMARY JUDGMENT STANDARD.</u>

Plaintiffs argue that MBUSI bears a heavy burden of demonstrating that no genuine dispute exists as to any material fact in this case, but plaintiffs ignore their role in summary judgment.  MBUSI bears the burden of demonstrating that summary judgment is appropriate, but one way it can meet that burden is to show

that the plaintiffs have not presented evidence that raises a genuine issue of fact for trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The law is clear that the plaintiffs cannot rely on their pleadings alone to survive summary judgment.  <u>Id.</u> at 324.  The plaintiffs must present specific facts that show there is a genuine issue for trial.  <u>Id.</u>  In this case, there are no such facts.  MBUSI relies on plaintiffs' own testimony wherein plaintiffs admit they perform exempt management and administrative duties and do not establish that their primary duty is non-exempt work.  Thus, the claims of Price and Fillmore should be dismissed so that time is not wasted presenting their cases to a jury which cannot reasonably find that they are non-exempt employees.

## II.   <u>PLAINTIFFS' RESPONSES TO MBUSI'S FACTS</u>.

The plaintiffs did not dispute the most important facts presented by MBUSI including:

<u>DON FILLMORE</u>

- Fillmore's duties differ from those performed by the TMs in his group.  (Fillmore Fact #14).

- In all the areas in which he has been a GL, his <u>primary duty</u> has been to ensure that his TMs follow the rules and procedures.  (Fillmore Facts ##25-35, 37-38, 72) (emphasis added).

- Fillmore constantly observes and monitors his TMs, and if they deviate from the process, he provides instant feedback.  (Fillmore Facts ##32-33).

- Fillmore counsels TMs on performance, quality of work and conduct, and he initiates CPRs.  (Fillmore Facts ##39-40).

- Fillmore evaluates his TMs' performance; if he rates them as not satisfactory in any area other than attendance they are not eligible for promotion; he rates them as ready or not ready for promotion; and his opinion normally is followed in determining if a TM or TL will be promoted.  (Fillmore Facts ##41-48).

- In addition, since moving to the Audit area, Fillmore reviews information collected by his TMs, ensures the information is accurate, prepares reports and agendas on quality issues and disseminates the reports and agendas outside of the group.  (Fillmore Facts ##79-83, 86-87).

- He also proposes improved feedback processes.  (Fillmore Fact #84).

- He uses his best judgment in performing all of his GL job duties. (Fillmore Fact #23).

- He leads his group independently of his AM or Manager.  (Fillmore Fact #15).

- He fulfills all of the roles and responsibilities of the GL position. (Fillmore Fact #24).

## MICHAEL PRICE

- Except from June 2009 to the middle of 2010, Price's <u>primary responsibility</u> has been to observe the work of the TMs and ensure they are complying with Company policies and standards.  (Price Facts ##139-143, 160) (emphasis added).

- He was instructed to walk throughout his group and observe the performance of his TMs and TLs throughout the day, and he has spent most of his time doing that in his groups.  (Price Facts ##191-193).

- Price gives work directions and assignments to his TMs and directs his group in safety, product quality, accuracy, productivity, cost reduction, housekeeping, efficiency, training and team harmony. (Price Facts ##119-120).

- If he is aware of a TM performance issue, it is his job to counsel the TM, and he initiates CPRs.  (Price Facts ##146, 151-152).

- He evaluates the performance of TMs in his group; if he gives them a not satisfactory rating in any area other than attendance, the TM or TL is not eligible for promotion; he appraises them as ready or not ready for promotion; and his appraisal normally is followed in determining if the TM or TL will be promoted.  (Price Facts ##165-170).

- For a period of time while on the Project 166 Team (June 2009 to middle 2010), Price worked with Engineering and Maintenance to "buy off" on equipment which was being designed to use in production of the new vehicle.  (Price Facts ##104-106).

- He reviewed the designs and equipment and determined if they were feasible for TM use.  (Price Facts ##107-108).

- He also offered input in planning, and he reviewed manpower numbers to determine how many TMs it would take to run the Shop. (Price Facts ## 109-110).

- Since the middle of 2010, Price began having TMs in his group again, which he takes to Germany, and he informs them on their work for the day, observes them and their work on the vehicle and informs them of correct procedure if they are not following it.  (Price Facts ##111-112).

- He uses his best judgment in performing all of his GL job duties. (Price Fact #127).

- He performs the essential functions listed on the GL job description. (Price Fact #137).

Plaintiffs mark some facts as disputed, but they do not actually dispute the facts.  Those "disputes" generally fit within several categories.

(1)     Plaintiffs state that they dispute several facts which are requests for admissions that they previously admitted.   For example, Fillmore admitted in

response to a request for admission that he leads his group in meeting company standards and he uses leadership skills in his GL position.  (Fillmore Fact #16).  In their brief, plaintiffs state this fact is "disputed" and include some cites that do not actually dispute the previously admitted fact.  (Pls. Br., p. 8).  Plaintiffs cannot at this late date attempt to dispute their prior admissions nor contradict those admissions with other evidence.  Jacobs v. Elect. Data Sys. Corp., No. 2:05CV925, 2006 WL 3742202, at *3 (M.D. Ala. Dec. 18, 2006).  In the Jacobs case, the plaintiffs tried to oppose summary judgment with deposition testimony that contradicted the admissions, but Judge Myron Thompson held that "admissions are unlike other evidence in that a party cannot rebut its own admissions by introducing evidence that contradicts it."  2006 WL 3742202, at *3 (citing In re Carney, 258 F.3d 415, 420 (5th Cir. 2001)).  Plaintiffs cannot wipe out a previous admission simply by marking it "disputed," and they also cannot contradict the evidence with deposition testimony.

(2)    Plaintiffs object to some facts which are their prior admissions of various requests for admissions.  For example, Fillmore admitted he shows and supports top performance in his group.  (Fillmore Fact #22).  In their brief, plaintiffs objected to this already admitted fact on the grounds that it is vague, ambiguous and unintelligible.  (Pls. Br., p. 9).  Fillmore must have understood this

fact when he admitted it because he did not object to it at that time.   These objections come too late.

(3)   Plaintiffs say they dispute various facts but the deposition citations they provide do not actually dispute the facts.   For example, Price admitted in response to a request for admission that he has the authority to initiate a CPR on a TM when he deems necessary.   (Price Fact #150).   In their brief, plaintiffs marked this fact as "disputed" and stated that Price must get approval to initiate CPRs.   (Pls. Br., p. 24).   This statement by plaintiffs does not dispute the fact cited.   As plaintiffs admitted in response to the next MBUSI fact, it is Price's responsibility to write the CPR and forward it to his AM for his approval.   (Price Fact #151).   Thus, he initiates the CPR.

(4)   Plaintiffs engage in word play in response to MBUSI's undisputed facts.   For example, in response to requests for admission, Price admitted that he manages attendance.   (Price Facts ##161, 163).   Plaintiffs stated in their brief that they dispute the fact that Price "manages" attendance and stated that Price "tracks" attendance.   (Pls. Br., p. 25).   Not only has Price already admitted he "manages" attendance, plaintiffs insistence on the word "tracks" is a distinction without a difference.   Clearly, plaintiffs just do not like the word "manage."

(5)   Plaintiffs mischaracterize testimony in an attempt to dispute facts.   For example, plaintiffs disputed Fact #19 that Fillmore initiates continuous

improvement activities in his group and leads the implementation of initiatives in his group, and cited Fillmore's testimony for the proposition that there is a Continuous Improvement group at MBUSI that is responsible for continuous improvement.  (Pls. Br., p. 9).  The cited testimony actually confirms that Fillmore leads continuous improvement in his group.  Fillmore testified as follows:

> Q:  All right.  So as part of your job duties as a group leader, do you work with other group leaders and the CI team to make continuous improvements in the processes?
>
> A:  Yes, I do work with other group leaders.
>
> Q:  As part of that, do you get feedback from your team leaders and team members about what they think might be good ideas?
>
> A:  Yes.
>
> Q:  And if they bring something to your attention that they're having a problem with or something that they think could be done differently, do you follow up on that?
>
> A:  Yes, I try to.

(Fillmore Dep., pp. 167-68).

In sum, plaintiffs admit the important facts, and to the extent they say they dispute certain facts they do not present the evidence to create genuine issues of material fact.

## III.   MBUSI'S RESPONSES TO PLAINTIFFS' ADDITIONAL FACTS.

Plaintiffs did not assert any additional proposed facts as to Price and Fillmore.

IV.   **ARGUMENT.**

Plaintiff Price should be dismissed from the case because he has been an exempt executive except from June 2009 to the middle of 2010 when he was on the 166 Project Team.   During that time he was exempt under the administrative exemption.   Plaintiff Fillmore should be dismissed from the case because he has been an exempt executive since he became a GL and also has been exempt under the administrative and/or combination exemptions since he became the Quality Audit GL.

Plaintiffs argue that Price and Fillmore are non-exempt working foremen instead of executive employees, but it is impossible for that to be the case when Price and Fillmore admitted (even in their brief) that their primary duty as a GL has been to observe the work of the TMs, ensure they are complying with the company policies and standards and to give them feedback when they are not. (Fillmore Facts ##25-35; Price Facts ##139-143).   Plaintiffs also argue that Price and Fillmore are not exempt under the administrative exemption because their duties relate to production and they do not exercise independent judgment or discretion, but this argument is not supported by the law or the facts.   Plaintiffs also argue that the combination exemption does not apply because Price and Fillmore allegedly cannot satisfy the executive or administrative tests, but the law is clear that they do not have to satisfy those tests for the combination exemption to

apply.  Otherwise, the combination exemption would be useless.  Plaintiffs' other arguments about salary basis, not having unfettered discretion, groups as a subdivision and recommendations on TM job status also have no basis in fact or law.

### A.   Plaintiffs Have Not Presented Evidence That Disputes That Price And Fillmore Are Exempt Executives.

### 1.   Management Is The Plaintiffs' Most Important Duty.

Plaintiffs' primary duty is their most important duty, and they have admitted that their most important duty is management.  Except for a period of time from June 2009 to mid 2010 when Price was on the Project Team, Price's and Fillmore's admitted primary duty has been to observe the work of their TMs and ensure they comply with company policies and standards.  (Price Facts ##139-142, 160, 191-193, 201; Fillmore Facts ##21, 25-35, 37-38, 72).  If the TMs do not comply with the standards, Price and Fillmore provide them feedback. (Price Fact #146; Fillmore Facts ##25, 27-28, 32-33, 38).  They direct the work of their TMs, give them assignments and lead them in meeting standards.  (Price Facts ##119-120, 131; Fillmore RFA ##25-26).  They counsel TMs on performance, quality of work and conduct, and they initiate discipline for TMs.  (Price RFA ##9-10; Price Facts ##146, 151-152; Fillmore Facts ##39-40).  They also make sure TMs work safely; they verify TMs are trained; they make sure their group is staffed; and they ensure their group puts out good quality products and works efficiently.  (Price Facts

##129-130, 154-157, 172-176; Price RFA ## 3, 13, 17 & 22; Fillmore Facts ##50-56, 58; Fillmore RFA ## 13, 17, 19, 22).  If standards are not followed, quality issues not addressed and lines not staffed, the consequences are serious for MBUSI so these GL duties are extremely important.   Price and Fillmore are held accountable for fulfilling these duties.  (Price Facts ##138, 143, 154; Price Dep., pp. 115-19; Price RFA ##13 & 22; Fillmore Fact #35).

Plaintiffs claim that they are not managers but working foreman, but there are several problems with their argument.   First, they rely on a superseded regulation.  The "working foreman" regulation does not apply to this case.  The applicable regulation is the concurrent duties regulation which makes clear that the performance of exempt and nonexempt duties concurrently does not preclude an employee from qualifying for the exemption when he meets the requirements of the executive exemption.  29 C.F.R. § 541.106.

Second, plaintiffs do not perform the same work as their subordinates. (Fillmore Fact #14).   Unlike TMs and TLs, Fillmore and Price spend the day walking the Line, observing TMs, providing feedback and assisting TMs with problems.   (Fillmore Facts ##21, 25-35, 37-38; Price Facts ##191-193, 201). Plaintiffs state in their brief that Price testified as follows:  "I was told [by Vice President Phil Johnson] that they didn't pay me to have my ass in the chair [and that h]e wanted me in the last station checking quality coming off that line."  (Pls.

Br., p. 3).[1]  No such quote appears in the deposition.  The actual quote is:  "I was told that they didn't pay me to have my ass in the chair was the quote from a vice president."  (Price Dep., p. 111).  This testimony followed Price's testimony that he had been instructed to walk throughout his group and observe the performance of his TMs and TLs throughout the day.  (Price Dep., p. 101).  In their brief, plaintiffs create a quote that better suits them by linking this actual quote with later testimony by Price that the vice president wanted him in the last station checking quality.  When the actual testimony is read and taken in context, it is easy to conclude that if the vice president told Price that the company did not pay him to have his ass in a chair, it is because he did not want Price sitting around the team center when he should be out supervising his TMs.

Moreover, plaintiffs fail to include that according to Price he was told to check quality when the casual time policy came out, which was March, 2006, and he was on the Z-2 line at the time.  (Price Dep., pp. 61, 112; Agreed Upon Undisputed Common Facts Applicable To Summary Judgment Motions To Be Filed In <u>Lawson</u> Case ¶ 11, Ex. D).  By February, 2007, he had moved to the Z-3 line, and by April of 2008, he was GL of the Dent Doctors group.  (Price Dep., p. 61).  Therefore, Price did not stay on the Z-2 line very long after he was allegedly

---

[1]     Plaintiffs did not include this alleged testimony in the facts section of their brief, and only included it in their argument.

told to check quality, and he testified that when in the Z-2, Z-3 and Dent Doctors areas, he spent most of his time walking the areas, observing TM performance, and addressing any TM issues. (Price Facts ##193, 201). Even when Price was allegedly told to be in the last station checking quality, he admits that he left the station when he was called to address TM issues and that was most of the time. (Price Dep., pp. 101-02, 113-14). So, clearly he could decide when to check quality and when to do his other duties. He also admits that he was accountable for the TMs doing their job and putting out good quality at all times. (Price Dep., pp. 115-16).

Fillmore alleged that when he was GL over Quality in the Paint and Body Shops he had to work on Line during lunch periods and when TMs were absent but never for a whole day, and that having to work on Line occurred particularly when he was in Plant 1. (Fillmore Dep., pp. 192-95). Fillmore left Plant 1 in 2004, which is prior to the statute of limitations, and left Paint and Body entirely around 2008. (Fillmore Facts ##5-6, 8). Clearly, working on the Line has not been his primary duty. Plaintiffs also claim that Fillmore's preparation of reports was a non-exempt duty, but in preparing these reports, he reviewed the information provided by his TMs, looked for errors and used the information to provide feedback to his TMs, so preparing these reports was directly related to his management duties. (Fillmore Dep., pp. 86, 94-95); see 29 C.F.R. §541.703

(directly and closely related work that is also considered exempt work includes recordkeeping, using the computer to create documents or presentations, and keeping production records for subordinates).

Third, the importance of the duties rather than the amount of time spent performing the duties is what matters.  The law is very clear that the focus should not be on the amount of time spent on a duty but the importance of the duty.  See, e..g., 29 C.F.R. § 541.700(b); Jones v. Virginia Oil Co., 69 Fed. Appx. 633 (4th Cir. 2003) (exempt although 75 to 80% of time spent performing non-exempt work); and Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1113-16 (9th Cir. 2001) (exempt although 90% of time spent performing non-exempt work).  Price and Fillmore have admitted that their primary duty was making sure their TMs followed policies and standards and not checking quality, preparing reports or any other duty that the plaintiffs may deem to be non-exempt work.  Thus, how can there be any question that they are exempt executives?

Finally, plaintiffs claim Price and Fillmore are working supervisors under 29 C.F.R. § 541.106(c) which provides that a production line worker is not exempt merely because he "occasionally" has responsibility for directing the work of nonexempt employees such as when the exempt supervisor is unavailable.  Price and Fillmore's management duties are not "occasional;" rather, they testified their primary duty is observing and providing feedback to their TMs and TLs.  (Fillmore

Facts ##21, 25-35, 37-38; Price Facts ##191-193, 201).   They also counsel, discipline and evaluate their TMs and make sure they are working safely, are trained and are producing good quality.  Their importance to MBUSI is not to work on the Line but rather to direct and supervise their group so that the group puts out good quality vehicles on a timely basis.

**2.    Plaintiffs' Main Argument That They Are Not Managers Because They Do Not Have Unfettered Discretion Is Contrary To The Law And Facts.**

As MBUSI has discussed in its previous briefs the test for application of the executive exemption is not whether the plaintiffs have unfettered discretion to do what they want as supervisors.   The regulations and case law are clear that supervisors normally have to operate within the bounds of company policy and subject to approval of higher management, and the fact they must do so does not make otherwise supervisory employees non-exempt.  See MBUSI Briefs (Lawson Docs. # 65, 73, 83) (citing Pollard v. GPM Invs., LLC, No. 3:10.CV.115, 2011 U.S. Dist. LEXIS 24199, at *21 (E.D. Va. Mar. 10, 2011) ("[C]ourts uniformly reject arguments that an employee cannot be an exempt executive if he cannot make hiring or firing decisions or is subject to rigid supervision."); Burson v. Viking Forge Co., 661 F. Supp. 2d 794 (N.D. Ohio 2009) ("[e]ven in situations where a supervisor, himself, is subjected to the close supervision of his superior, courts have routinely found that the supervisors responsible for the daily activities

of their subordinates are vested with enough discretionary power and freedom from supervision to qualify for the executive exemption"); <u>Jackson v. Advance Auto Parts, Inc.</u>, 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005) ("the fact that Plaintiffs had to adhere to certain guidelines or in certain instances obtain the Store Manager's approval does not diminish Plaintiffs' discretionary powers"); <u>Beauchamp v. Flex-N-Gate LLC</u>, 357 F. Supp. 2d 1010, 1017 (E.D. Mich. 2005) (stating that nothing in the applicable law "requires that a supervisor must have unfettered discretion in the performance of his management duties in order to be an 'executive'").

Moreover, "independent discretion" is not one of the current requirements of the executive exemption test, but rather is part of the administrative exemption test. (<u>See</u> 29 C.F.R. §§ 541.100 & 541.200).   In fact, independent discretion was omitted from the post 2004 regulations as a factor in determining if an employee's primary duty is management.  (Compare former 29 C.F.R. § 541.103 & current 29 C.F.R. § 541.700(a)).   Regardless, the evidence is not at all consistent with plaintiffs' representation in their brief that they do not exercise independent discretion, an assertion that conveniently overlooks plaintiffs' admissions. Plaintiffs make sweeping statements in their brief about things they supposedly do not have the discretion to do (Pls. Br., pp. 41-42), but the citations they provide do not support those statements as shown below:

- Plaintiffs state in their brief that the AM or upper management directs them on what duties to perform including to work on the production line.  Price testified that when he was on Z-2 (2006) he was told to check quality at the end of the line, but he left the line to address TM issues which was most of the time.  (Price Dep., pp. 61, 101-02, 112-14).  Clearly, he has the discretion to decide when to check quality and when to perform other duties.  Fillmore testified that when he was over Quality in Body and Paint, (which he left in 2008) and particularly in Plant 1 (which he left in 2004), he worked portions of the day on line for TM lunch breaks and when TMs were out.  (Fillmore Facts ##5-6, 8; Fillmore Dep., pp. 193-95).  Fillmore and Price both admit that these limited duties were not their primary duties and that management duties were their primary duties.  (Fillmore Facts ##21, 25-35, 37-38; Price Facts ##191-193, 201).

- Plaintiffs state in their brief that they cannot address attendance issues.  Fillmore and Price have admitted that they manage attendance.  (Price RFA ##3, 4, 14; Fillmore RFA #14; Fillmore Dep., pp. 56-58, 141).

- Plaintiffs state in their brief that they do not control manpower, and they cite testimony by Price that he does not think he "manages."  However, Price admitted in response to requests for admissions that he ensures his group is properly staffed, and he manages attendance, vacation and timekeeping.  (Price RFA ##3-4).  He also admitted that he performs the essential functions of the job, which includes coordinating proper manning levels.  (Price Dep., p. 168; Price Dep. Ex. 15).

- Plaintiffs state in their brief that they do not track performance.  The testimony cited by plaintiffs does not establish that they do not track performance.  To the contrary, the evidence reflects that plaintiffs observe TMs and their work, provide them feedback, counsel them and initiate disciplinary action.  (Fillmore Facts ##25-35, 37-40; Price Facts ##112, 139-143, 145-146, 148-152, 160, 191-193, 201).

- Plaintiffs state in their brief that they do not direct the flow of work.  The citations included by plaintiffs do not support this statement.  Price testified that he directs his TMs and gives them assignments, that he tries to make sure his TMs work effectively and efficiently,

and that he ensures that production and quality goals are met in his group. (Price Facts ##112, 119-120, 124, 129). He also admitted he supervises the TLs and TMs in his group. (Price RFA #1). Fillmore likewise ensures that production and quality goals are met in his group. (Fillmore RFA ##13, 22).

- Plaintiffs state in their brief that they do not have the authority to address TM complaints. The citations plaintiffs included do not have anything to do with TM complaints. Both Fillmore and Price admitted they address TM complaints and grievances. (Fillmore RFA #18; Price RFA #18).

- Plaintiffs state in their brief that they cannot remedy quality issues, but that is not what the evidence reflects. Both Fillmore and Price testified that their primary duty is to observe TMs and provide them feedback when they do not comply with standards. (Fillmore Facts ##25, 27, 32, 38; Price Facts ##139-141). As Fillmore explained, providing feedback to TMs makes for better quality. (Fillmore Fact #28). Moreover, both plaintiffs admitted that they ensure that production and quality goals are met in their groups. (Fillmore RFA ##13, 22; Price RFA ##5, 13, 22). They also both admitted that they counsel TMs on quality issues. (Fillmore RFA #9; Price RFA #9).

- Plaintiffs state in their brief that they do not have the authority to discipline TMs. This statement is not true. Both Price and Fillmore admitted they counsel TMs and initiate CPRs. (Fillmore Dep., pp. 56-58; Fillmore RFA #9; Price Dep., pp. 146-47; Price RFA ##9-10). They also enforce company policy and work rules in their group. (Price Facts ##142-143; Fillmore Fact #37).

- Plaintiffs state in their brief that they do not have any authority to hire, fire or promote TMs. Plaintiffs do not dispute however that they evaluate TMs; that if they evaluate any TMs as not satisfactory in any category other than attendance the TM cannot be promoted; that their recommendations on promotion normally are followed; and that they discipline TMs which can result in a change in the TMs' job status. (Fillmore Facts ##41-48; Price Facts ##165-170; Jones Decl. ¶¶ 31-33, 35-41; Jones Decl. Exs. U, pp. 5-6, W, X).

Plaintiffs also make the absurd statement that Price and Fillmore perform almost none of the management duties set forth in the regulations, but they do not cite a single fact in support of that statement.   The undisputed evidence demonstrates that plaintiffs do perform those management duties.   Price and Fillmore manage TM attendance (Price RFA ##3, 4, 14; Fillmore RFA ##14; Fillmore Dep., pp. 56-58, 141); manage manpower and apportion work (Price RFA ##3-4; Price Dep., pp. 80-81, 168; Price Dep. Ex. 15); direct the work of TMs and the flow of work (Price Facts ## 112, 117, 119-120, 124, 129; Fillmore RFA ##13, 22); address TM complaints and grievances (Price RFA #18; Fillmore RFA #18); counsel and initiate discipline of TMs (Price Dep., pp. 146-47; Price RFA ##9-10; Fillmore Dep., pp. 56-58; Fillmore RFA #9); appraise TMs' productivity and efficiency for the purpose of recommending promotions and other changes in status (Price Facts ##165-170; Fillmore Facts ##41-48); maintain production records (Fillmore Dep., pp. 40, 63-65, 77-78, 82-88, 94, 147-76; Fillmore Dep. Exs. 7-18; Price Dep., pp. 91-96, 98-99, 122-26; Price Dep. Exs. 3-4); plan work within their group (Price Dep., p. 81; Price RFA ## 2, 5); review and approve work techniques to be used (Fillmore Dep., pp. 161-63, 165-67, 186-87; Price Dep., pp. 155-56); provide for the safety and security of the TMs and property  (Price Dep., pp. 118-19; Price RFA #17; Fillmore RFA #17); and monitor and implement legal

compliance measures.  (Fillmore Dep.,  pp. 101-02; Fillmore Dep. Ex. 1; Price Dep., pp. 52-53; Price Dep. Ex. 2).

Clearly, plaintiffs have plenty of discretion and use it in matters of discipline, evaluations, recommendations for promotions, quality issues, production issues, TM complaints, manpower and other such matters.  They also have management duties including making sure their group complies with SMPs, policies and quality and production standards, and they take measures when their group does not.  This is the very definition of supervision and is what these GLs do on a daily basis.  Donovan v. Burger King Corp., 672 F.2d 221, 226 (1st Cir. 1982) ("[e]nsuring that company policies are carried out constitutes the 'very essence of supervisory work'") (citation omitted).

Plaintiffs' argument that 116 GLs for over 2,000 production TMs are "too many" supervisors is contrary to the regulation that provides that an executive employee need only supervise two or more employees.  29 C.F.R. § 541.100.  It is also contrary to former DOL Director of Enforcement Farrington's experience that he has never seen an employee who supervised 18 to 25 employees, such as the plaintiffs generally do, who did not have management as his or her primary duty. (Farrington Report, p. 10).[2]  Plaintiffs' argument that the invention of the assembly

---

[2]      The Expert Report of Brian T. Farrington is attached as Ex. 28 to MBUSI's Evidentiary Submission (Volume 2).

line prevents the use of discretion in supervision is also without any basis and has been rejected by the courts.  See, e.g., Burson, 661F. Supp. 2d at 801; Haas v. Behr Dayton Thermal Prods., LLC, No. 3:07cv139, 2008 U.S. Dist. LEXIS 122184, at *61 (S.D. Ohio Dec. 22, 2008); Beauchamp, 357 F. Supp. 2d at 1017.  Plaintiffs' opinions about how many supervisors are necessary and how to run an assembly plant are unsupported by any authority and thus irrelevant to the exemption analysis.[3]

> ### 3. Plaintiffs' Argument That The GLs Are Not Paid On A Salary Basis Is Contrary To This Court's Prior Ruling And The Law.

As briefed extensively in MBUSI's prior briefs (Lawson Docs. # 87, 92, 97), plaintiffs argument that GLs were not paid on a salary basis because on some non-production Fridays they could use a vacation or holiday bank day, take off an unpaid personal day or use the Friday bank is without merit.  This Court has already ruled that this practice is not contrary to the salary basis.  (Hicks v. MBUSI, 7:08-CV-0536-LSC, Memorandum of Opinion, pp. 6-9).  This ruling is consistent with the regulations, DOL Opinion Letters and case law.  29 C.F.R. § 541.602(a); 29 C.F.R. § 541.604(a); Bell v. Callaway Partners, LLC, No. 1:06-CV-1993, 2010 WL 6231196, at *9 (N.D. Ga. Feb. 5, 2010), aff'd, 394 Fed. Appx.

---

[3]     Plaintiffs also claim that TLs make more money than GLs, and they cite Maury Costes' alleged testimony in support of that claim.  However, Costes admitted that he does not know his TMs' or TLs' salaries or how much money any of them made in a given year.  (Costes Dep., pp. 70-72).

632 (11th Cir. 2010), cert. denied, 131 S. Ct 1477 (2011) (citing Wage and Hour

Opinion Letter No. FLSA 2006-24NA, 2006 WL 4512966 (Nov. 3, 2006) & Wage

and Hour Opinion Letter No. FLSA 2006-24, 2006 WL 2792438 (July 6, 2006).

As this Court found, an employer may provide exempt employees with an

overtime premium and may reduce the number of hours for which the premium is

paid as long as it provides employees with their full predetermined salary.  (Hicks

v. MBUSI, 7:08-CV-0536-LSC, Memorandum of Opinion, pp. 8-9); see also

Coppage v. Bradshaw, 665 F. Supp. 2d 1361, 1366 (N.D. Ga. 2009).  The DOL

Opinion Letters cited by plaintiffs are inapposite to this case because in the

situations addressed by those letters, the employer reduced the employee's salary

rather than compensation beyond their salary.  The three hypothetical scenarios

presented by the plaintiffs do not show any unlawful activity because in those

scenarios a GLs' salary is never deducted unless he voluntarily chooses to take off

an unpaid day.  Also, the Klein v. Rush-Presbyterian-St. Luke's Med. Ctr., 990

F.2d 279 (7th Cir. 1993), case cited by plaintiffs is irrelevant to this case because it

interpreted the pre 2004 regulations.  See Bell, 2010 WL 6231196, at *9.

Finally, plaintiffs cite the testimony of Joel Stewart and Maury Costes in

support of their position that plaintiffs were not paid on a salary basis.  Stewart's

testimony cited by plaintiffs shows nothing more than his paychecks were less in

certain years (which is likely because of less overtime) and that he chose to take

off several unpaid days.  Costes claimed his salary was improperly deducted twice, but he does not remember what days those were and has no record of any unpaid time off.  (Costes Dep., pp. 31-32, 67-69).  Moreover, there is no evidence that there have been any improper deductions since the Spring of 2009; and no other GLs alleged they were made to take off unpaid days.  29 C.F.R. § 541.603(a). Improper deductions result in loss of an exemption only if the facts demonstrate that the employer did not intend to pay employees on a salary basis.  Id.  Under these circumstances, there is no evidence that MBUSI did not intend to pay its GLs a salary.  Id.

In fact, it is undisputed that MBUSI's policy is that it does not make any improper deductions from the salaries of exempt employees, and that policy provides a safe harbor from any finding that the exemption was lost.  (29 C.F.R. § 541.603(d); Agreed Upon Undisputed Common Facts Applicable To Summary Judgment Motions To Be Filed In The Lawson Case ¶ 15, Ex. H).  There is absolutely no evidence that any GL informed MBUSI that his or her salary was improperly deducted.  Thus, even if a GL's salary was deducted he or she did not lose his exempt status as an executive employee.

Both Price and Fillmore admit they are paid at least $455.00 per week in salary.  (Price RFA #41; Fillmore RFA #41).  Price and Fillmore do not allege that they had any improper deductions from their salary.  Plaintiffs argue in their brief

that Fillmore was forced to "work the gate" in order to "pay off" the Friday bank time, but plaintiffs totally misconstrue Fillmore's testimony.  Fillmore's testimony is not about working the gate.  Fillmore testified that he ran a gate check report on himself, which shows the time that he entered and exited the plant.  (Fillmore Dep., pp. 111-13).  He submitted this gate check to his supervisor to show the overtime hours he worked in 2010 so he could credit them against his Friday bank time. (Fillmore Dep., pp. 111-19).  Fillmore never testified that he worked at the MBUSI gate or was "forced to volunteer for other jobs" as plaintiffs claim in their brief. Fillmore complains that he was unable to credit all the overtime he worked against his Friday bank time, but as discussed above, overtime premium was a voluntary benefit paid by MBUSI to exempt employees and it could administer the benefit as it chose to do so.  The plaintiffs have not produced any evidence that should cause this Court to overturn its prior decision on this exact issue.

### 4.    Plaintiffs' Argument That A "Group" At MBUSI Is Not A Customarily Recognized Department Or Subdivision Has No Merit.

The plaintiffs argue that groups are not recognized subdivisions but are crews assigned a series of task, but they present no support whatsoever for this argument.  In contrast, the evidence shows each group is assigned a particular and continuing function.  Fillmore was GL over Quality for the Body Shop and then for the Body and Paint Shops.  He also served as GL over Quality for the Assembly

Shop and then as GL of the Quality Audit group.  Price served as GL of the Z-2 Line, the Z-3 Line, the Dent Doctors group and then the 166 Project group.  Each of these groups has a particular task in a designated area and are not crews roaming the plant looking for work.  Plaintiffs' assertions that "no factory has 116 different departments" and that groups are redundant are unsupported by any evidence and are contrary to the evidence presented by MBUSI that its production system and classification of GLs as supervisors of groups were based on industry standards. (Schwartz Decl. ¶¶ 11-12).[4]

> ### 5.    There Is No Disputed Issue About The Weight Given To GLs' Recommendations On Promotions For TLs And TMs.

As discussed in MBUSI's previous briefs, to qualify for the executive exemption plaintiffs need only make recommendations about any change of status of TMs, which includes promotion and discipline.  GLs do not have to hire or fire or even make recommendations about hiring and firing to be exempt.  29 C.F.R. § 541.100.  The evidence is undisputed that GLs evaluate TMs and TLs at least annually; that if they give a TM or TL a not satisfactory rating in any category other than attendance the TM or TL is not eligible for promotion; that GLs rate TMs and TLs as ready or not ready for promotion; and that the GLs' rating

---

[4]    The Declaration of Peter Schwartz is attached as Ex. 27 to MBUSI's Evidentiary Submission (Volume 2).

normally is followed in determining if the TM or TL will be promoted.  (Price Facts ##165-170; Fillmore Facts ##41-48).

The plaintiffs also initiate discipline on TLs and TMs, and TMs or TLs with an active CPR in their file cannot be promoted.  (Jones Decl. ¶ 41; Jones Decl. Ex. U, pp. 5-6).  A CPR also can result in termination, demotion and other negative changes in job status.  (Jones Decl. ¶¶ 35-40; Jones Decl. Exs. W, X).

Plaintiffs argue that their recommendations are not given particular weight because their recommendations have to be approved by upper management, other factors besides their recommendations are considered and GLs use standardized forms.  The plaintiffs allege that AMs and HR change evaluations, but while they have not pointed out in their brief any particular instance where this has happened, even occasional disagreements by higher management does not mean the GLs' recommendations lack particular weight.  Plaintiffs' arguments have been rejected by this Court, other courts and the DOL.  See Hicks v. MBUSI, 7:08-CV-0536-LSC, Memorandum of Opinion, p. 15; see also, 29 C.F.R. § 541.105; Scott v. SSP Am., Inc., No. 09-CV-4399, 2011 U.S. Dist. LEXIS 32819, at *44 (E.D.N.Y. Mar. 29, 2011); Burson, 661 F. Supp. 2d at 801; Pendlebury v. Starbucks Coffee Co., No. 04-80521, 2008 WL 763213, at *8 (S.D. Fla. Mar. 13, 2008).

**B.**   **When Fillmore And Price Have Performed Exempt Administrative Duties They Also Were Exempt Under The Administrative Exemption.**

When GLs over certain groups, Fillmore and Price have performed office or non-manual work directly related to the business operations of MBUSI.  In the Audit area, in addition to his management duties, Fillmore reviews quality information provided by his TMs, prepares reports and disseminates them for use in addressing quality issues.  (Fillmore Dep., pp. 63-65, 77-78, 82).  For a period of time, Price's work on the Project 166 Team involved pre-production planning.  (Price Dep., pp. 72-78).  When performing these exempt administrative duties, Fillmore and Price also were exempt under the administrative exemption.

Plaintiffs do not dispute that Fillmore and Price performed office or non-manual work, but they argue the administrative exemption does not apply to Price or Fillmore because (1) their administrative duties allegedly related to production and (2) they allegedly did not exercise independent judgment or discretion.  Neither of these arguments has merit.

The applicable DOL regulation provides that to meet the requirement that the employee perform work "directly related to the management or general business operations" of the company, the employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product

in a retail or service establishment."   29 C.F.R. § 541.201(a).   Plaintiffs do not argue that Fillmore and Price's administrative duties involved working on the production line, but they allege that this regulation means that Fillmore and Price's administrative duties cannot relate to production and be exempt duties.   This is not what is provided by the regulation.

In fact, the regulation provides some examples of work directly related to management or general business operations, and included in those examples are auditing, quality control, research, safety and health, and personnel management. 29 C.F.R. § 541.201(b).   Fillmore's administrative duties fit squarely within the categories of auditing and quality control.   Price's duties of reviewing designs and equipment to determine if they were feasible for TM use, determining how many TMs it would take to run the Shop and providing other input into the pre-production planning relates to research, safety and health and personnel management.   Plaintiffs' assertion that work directly related to general business operations does not include these duties is not supported by the regulations.

The case law also does not support the plaintiffs' argument that administrative work that relates to production does not relate to general business operations.   The Unites States District Court for the District of Connecticut rejected a similar argument in Cooke v. General Dynamics Corp., 993 F. Supp. 56, 61 (D. Conn. 1997), as follows:

> Furthermore, the fact that defendant has admitted that plaintiffs' duties related to the "production" of submarines does not dispose of this issue.  Presumably the same could be said of almost every employee who worked for defendant.    As defendant points out, the administrative/production dichotomy focuses not on whether an employee worked for an enterprise engaged in production activity, but whether the employee's primary duty was producing the product in question....    Therefore, the fact that plaintiffs' job duties and responsibilities related to the production of submarines is insignificant.

(citations omitted).   The court further noted that a review of numerous cases involving the administrative exemption "reveals that many cases have held that employees who work for a manufacturing or industrial firm in areas relating to production are exempt administrative employees."  Id.  The court pointed to the following examples of employees found to be exempt pursuant to the administrative exemption in other cases:   (1) a group leader in charge of a particular of the torpedo manufactured by the employer; (2) a supervisor in an aircraft production plant; (3) a quality manager in charge of the inspection department of a motor production plant; (4) an assistant expediter in the procurement department of a torpedo manufacturing company; (5) a production manager for a manufacturing facility; (6) a spare parts department manager for a trucking company; (7) a cost estimator employed by a radio corporation; and (8) a supervisor in charge of storage and distribution of materials in an ammunition plant.  Id. at n.2.

The cases cited by plaintiffs do not support their argument.  In <u>Davis v. J.P. Morgan Chase & Co.</u>, 587 F.3d 529, 535 (2d Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 2416 (2010), underwriters were found to be non-exempt because they directly produced the good or service of the business.  The business of the company was to write loans, and these individuals actually wrote the loans.  Moreover, their work was functional and not conceptual; they had no involvement in determining future strategy or direction of the business; and they did not perform any other function that in any way related to the business's overall efficiency or mode of operation.  <u>Id.</u>  Unlike these underwriters, Fillmore and Price did not "produce" the vehicle; rather, their administrative duties related to design, concepts, strategy and direction, efficiency, mode of operation and quality control.

Likewise, the case of <u>Roe-Midgett v. CC Servs., Inc.</u>, 512 F.3d 865 (7th Cir. 2008), does not help the plaintiffs.  The plaintiffs cite this case for the proposition that the production/administration dichotomy is particularly useful in a manufacturing setting, but plaintiffs fail to include the example provided by that case which was:  production employees working on the line running machines versus administrative employees working in an office communicating with customers and doing paperwork.  <u>Id.</u> at 872.  This case actually reaffirms that the administrative exemption is applicable in the production setting and that employees like Fillmore and Price who are not working on the line but are

performing office work related to the operations of the business are exempt under the administrative exemption.

Finally, the DOL Administrative Interpretation cited by plaintiffs found that mortgage loan officers were production rather than administrative employees because they were performing the production work of the company which was making loans.  U.S. Dep't of Labor, Wage and Hour Administrator's Interpretation No. 2010-1 (Mar. 24, 2010).  The DOL noted that the loan officers were not involved in internal management or general business operations, such as providing advice regarding internal operations.  Unlike these loan officers, Fillmore and Price did provide internal advice to the company regarding quality, design of equipment and manpower.  Moreover, the DOL has emphasized that the production versus administrative dichotomy has never been and never should be used as a dispositive test for exemption.  U.S. Dep't of Labor, Wage and Hour Preamble to Final Rule, Defining & Delimiting the Exemption for Executive, Administrative, Professional, Outside Sales & Computer Employees, 69 Fed. Reg. 22122, 22141, 2004 WL 865626 (Apr. 23, 2004).

Plaintiffs argue that Fillmore and Price do not exercise independent judgment and discretion.  This argument has no merit for a couple of reasons.  First, both Fillmore and Price admitted they use judgment in performing their duties.  (Fillmore Fact #23; Price Fact #127).  Second, Fillmore and Price do in

fact exercise independent judgment and discretion.  Fillmore reviews quality audit information provided by his TMs, sifts through the stacks of paper, makes sure the information is accurate, directs the TL to correct it if it is not, prepares reports and agendas based on the information and disseminates it outside of his group for use in addressing quality issues.  (Fillmore Dep., pp. 84-86).  He also proposes improved quality feedback processes.  (Fillmore Dep., pp. 186-87; Fillmore Dep. Ex. 21).  Price worked with Engineering and Maintenance to buy off on equipment designs, determined if equipment would be feasible for TM use, determined how many TMs it would take to run the Shop and provided other pre-production planning input.  (Price Dep., pp. 72-78).

As the Eleventh Circuit has recognized, Price and Fillmore can exercise independent judgment and discretion even if their actions are subject to review and even if they do not have limitless discretion.  Hogan v. Allstate Ins. Co., 361 F.3d 621, 627 (11th Cir. 2004); see also Rock v. Ray Anthony Int'l, LLC, 380 Fed. Appx. 875 (11th Cir. 2010) (finding crane dispatcher administratively exempt even though the majority of his tasks involved following load charts because he also made sure crews went to the right place with the right equipment, found work for crews, had authority to resolve problems and considered certain factors in selecting cranes).

In <u>Kennedy v. Commonwealth Edison Co.</u>, 410 F.3d 365 (7th Cir. 2005), the Seventh Circuit found certain nuclear power plant employees, including planners and first line supervisors, to be exempt under the administrative exemption because they managed the work of others which is of substantial importance to the management of the business.  <u>Id.</u> at 373 (noting also that the "mere fact that their advice and planning relates directly to plant operations is not enough to make them, personally, the actual production employees").  The Seventh Circuit was not persuaded by the plaintiffs' argument that they worked in a highly regulated environment and stated as follows:

> While the regulations require the employee to exercise independent judgment, the term does not require this judgment to be made in isolation.  The fact that others may review or even reverse an employee's judgment does not mean necessarily that the employee will fall outside the FLSA's administrative exemption.
>
> The plaintiffs make the general argument that because a nuclear power plant is an exceedingly regulated workplace - as they put it, "procedure driven, routine, and strictly controlled" - there was no room for any of the plaintiffs to exercise independent judgment.  We disagree.  Taken to its logical limit, such a blanket rule would prevent any employee at ComEd from falling under the exemption.  Moreover, "[j]ust because an employee may spend a significant portion of his time engaged in ministerial or routine tasks does not necessarily prevent the application of the administrative exemption."

<u>Id.</u> at 374 (internal quotation marks & citations omitted); <u>see also</u> <u>Bosch v. Title Max, Inc.</u>, No. CIV.A.03-AR-0463-S, 2005 WL 357411, at *8 (N.D. Ala. Feb. 7, 2005) (holding that "[a]n employee can still exercise discretion and independent

judgment even when her job is 'heavily regulated' by the employer to minimize the amount of discretion the employee uses").

The record reflects that Fillmore and Price performed administrative duties directly related to the general business operations of MBUSI and that they used independent judgment and discretion in doing so.  Plaintiffs make no argument that would justify denial of MBUSI's Motion on this issue.

### C.   The Combination Exemption Also Applies To Fillmore.

Fillmore also qualifies for the combination exemption.  In the Audit area, Fillmore manages the TMs and TLs in his group; in fact, he testified this is his primary duty.  (Fillmore Fact #25).  He also spends time performing administrative duties.  In fact, his executive and administrative duties overlap because when he reviews the information provided by his TMs for errors and finds errors he provides that feedback to them.  (Fillmore Dep., pp. 85-88).

This combination of duties qualifies Fillmore for the combination exemption.   29 C.F.R. § 541.708.   The plaintiffs argue that the combination exemption does not apply because the plaintiffs allegedly do not qualify for the executive or administrative exemptions.  This argument does not comport with the law that allows for the duties of two or more exemptions to be "blended" for the purposes of qualifying for the primary duty requirement of an exemption.  See IntraComm, Inc. v. Bajaj, 492 F.3d 285, 293-94 (4th Cir. 2007).  The plaintiffs do

not have to meet the primary duty test of the other exemptions.  As the court stated

in IntraComm:

> According to the Secretary, the combination exemption addresses the situation that exists when an employee does not meet the primary-duty requirement of any individual exemption.  In such cases, an employee may nonetheless be exempt from the FLSA's minimum-wage requirements pursuant to the combination exemption, which permits considering different exempt duties together for purposes of meeting the primary-duty test.  Thus, an employee performing duties that fall under more than one individual exemption, none of which separately represents her primary duty, may be exempt under the combination exemption if those duties, when combined, constitute her primary duty.  In other words, the combination exemption provides a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test.

Id. at 294 (citations omitted).  If plaintiffs' interpretation were accepted instead of

the Secretary of Labor's interpretation, the combination exemption would be

useless.  Price and Fillmore meet the executive and the administrative exemptions,

and Fillmore also meets the combination exemption.

### D.    Dismissal Of A Plaintiff's Claim Is A Final Judgment.

Because these plaintiffs have never been certified as a class, an order of

summary judgment on each plaintiff's claim is a final order.  However, to avoid

any question, this Court should expressly enter final summary judgment as to the

claims of these two plaintiffs.  The plaintiffs do not dispute that the entry of

summary judgment on a plaintiff's claim is a final judgment under Rule 54(b), but

the plaintiffs argue in a footnote that piecemeal appeals will result.  Because each

plaintiff in this case has individualized facts that the Court is considering in determining summary judgment, each plaintiff's appeal (if they do appeal) would have to be considered individually by the appeals court anyway. Thus, there is no efficiency in delaying final judgment on these claims, but final resolution on each plaintiff's claim will result in the narrowing of the issues in the remaining cases.

The plaintiffs also argue that if this Court finds in favor of plaintiffs on the salary basis issue, that determination would resolve the entire case, but there would be numerous appeals based on the same circumstances. That argument makes no sense. MBUSI has filed for summary judgment and not plaintiffs so if summary judgment is granted thereby presenting the opportunity for appeal, the Court could not have found in favor of the plaintiffs. Moreover, the Court is not likely to find in favor of the plaintiffs on the salary basis issue because it has already decided against the plaintiffs' position on the exact same issue in accordance with well established law. The real issue in the case is the primary duty of the plaintiffs, and the Court's grant of summary judgment as to plaintiffs on that issue depends on the facts of each plaintiff's case.

Therefore, while summary judgment on each plaintiff's claim is a final judgment in any event, this Court can resolve any doubt as to the time to appeal by expressly entering final judgment when a plaintiff's claim is dismissed.

## V.    **CONCLUSION.**

Plaintiffs failed to present any evidence to dispute that the executive, administrative and combination exemptions apply.   Plaintiffs' arguments are contrary to the law and the facts.   Final summary judgment therefore should be granted on Fillmore and Price's claims, and their claims should be dismissed with prejudice with costs taxed to these plaintiffs.

s/ Michael L. Lucas
Michael L. Lucas (LUC004)
Ashley H. Hattaway (HAT007)

Attorneys for Defendant
Mercedes-Benz U.S. International,
Inc.

OF COUNSEL:

BURR & FORMAN LLP
3400 Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 451-5204
Facsimile: (205) 458-5100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendant Mercedes-Benz U.S. International, Inc.'s Reply Brief In Support Of Its Motion For Final Summary Judgment As To Plaintiffs Who Are Exempt Pursuant To The Executive, Administrative and Combination Exemptions has been electronically filed with the Clerk of the Court using the CM/ECF system on the following CM/ECF participant, on this 11th day of January, 2012:

Thomas F. Campbell
D. Keiron McGowin
CAMPBELL LAW
1 Chase Corporate Drive
Suite 180
Birmingham, AL 35244

Mark R. Thierman
Joshua Buck
THIERMAN LAW FIRM, APC
7287 Lakeside Drive
Reno, Nevada  89511


s/ Michael L. Lucas
OF COUNSEL