FILED
2012 Feb-16  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JEFF HICKS, | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:08-cv-0536-LSC |
| MERCEDES-BENZ U.S. | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

## I. Introduction.

Before the Court is the second in a series of motions for summary judgment

filed by Defendant Mercedes-Benz U.S. International, Inc. ("MBUSI").[1] The present

motion, filed on August 29, 2011 (Doc. 101),[2] asks the Court to enter final judgment

against a group of four Plaintiffs whose claims are allegedly time-barred. A brief in

---

[1]This series of motions concerns the Plaintiffs who filed suit together in *Lawson v. MBUSI*, 7:09-cv-1157-LSC, and does not pertain to Jeff Hicks himself. The *Lawson* and *Hicks* cases were consolidated for discovery purposes, and on February 7, 2012, this Court ordered the claims of the individual *Lawson* Plaintiffs to be severed into individual cases. These individual cases remain consolidated for case management purposed under *Hicks*, with the Court continuing to evaluate the already-filed set of summary judgment motions.

[2]Unless otherwise noted, citations to the record are to the document numbers in the *Hicks vs. MBUSI* case, 7:08-cv-0536-LSC. Document numbers preceded by "*Lawson*" reflect the document number assigned in the *Lawson v. MBUSI* case, 7:09-cv-1157-LSC.

support (Doc. 102) was contemporaneously filed.[3] Plaintiffs filed a response to the motion on September 29, 2011 (Doc. 118), and MBUSI filed a reply brief on October 19, 2011. (Doc. 130.) The motion is now ripe for decision.

## II. Facts.[4]

The present motion is directed specifically to four of the Plaintiffs: David Jones, Michael Kirkley, Gralyn Lawson,[5] and Kelly Pitman. Each were at one time employed by MBUSI in the capacity of Group Leader ("GL").

David Jones was hired by MBUSI in November of 1996, was promoted to GL in July of 1998, and ended his employment with MBUSI in July of 2006. Michael Kirkley was hired in November of 1999, became a GL in February of 2004, and stopped working for MBUSI on August 3, 2007. Gralyn Lawson started in January of

---

[3] MBUSI also submitted, by way of another motion (Doc. 103) and brief (Doc. 104), a separate request for the Court to determine the applicable statute of limitations. Since this issue is encompassed by the present motion, and the briefing is substantially identical, the Court will consider the two motions together.

[4] The facts set out in this opinion are gleaned from the "Agreed Upon Undisputed Common Facts Applicable to Summary Judgment Motions," (Doc. 97), the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, as well as the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[5] The Court granted summary judgment on December 22, 2011, against a group of seven Plaintiffs, including Mr. Gralyn Lawson. (*See* Docs. 151 & 152.) Because this and other motions for summary judgment provide a possible alternative basis for summary judgment, they are not precluded by the fact that summary judgment may have already been granted as to particular Plaintiffs.

1996, and was promoted to GL the following October. He stopped being a GL on March 5, 2007, when he  transferred to the position of Team Relations Specialist. Kelly Pitman began working for MBUSI in 1997, and became a GL in September of 2004. Pitman then became the Acting Assistant Manager for Assembly, Plant 2, on September 1, 2006, and was promoted from Acting Assistant Manager to Assistant Manager on March 1, 2007. He remained an Assistant Manager until leaving MBUSI on March 21, 2008.

While employed as GLs, these Plaintiffs were classified by MBUSI as exempt employees.  MBUSI made changes to the overtime policy for exempt employees  in February and March of 2005, and again in March of 2006. Following the March 2006 changes, GLs could be paid overtime only after completing five unpaid hours per week of pre- and post-shift work activities designated as "casual time." While overtime would still be paid for extra hours worked on weekends without the casual time requirement, the policy effectively required forty-five hours, rather than forty, to be worked before any weekday overtime could accrue. The "casual time" language was removed from the policy in a revision on April 7, 2008.

On June 10, 2009, a number of GLs and former GLs filed a complaint against MBUSI. The essence of the complaint is that, by mischaracterizing the GLs as

exempt, MBUSI was "requiring [them] . . . to work overtime without payment of overtime . . . in violation of the federal Fair Labor Standards Act." (*Lawson* Doc. 1 at 9.) The names of both Lawson and Pitman appear as "named Plaintiffs" in the original June 10 complaint. (*Lawson* Doc. 1 at 3, 6.) Lawson, Pitman, and Jones were among those listed in a "consent to joinder" which was filed on August 10, 2009. (Doc. 9.) An amended complaint filed on August 20, 2009, listed all four of these Plaintiffs. (*Lawson* Doc. 10 at 3, 7-9.) Kirkley filed his consent to sue on August 21, 2009.

## III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that

the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.   Analysis.

At issue is whether the four Plaintiffs are barred from asserting their claims because they waited too long to file them. The analysis involves two determinations: first, the length of the limitations period; second, its application to the present circumstances.

## A. The Applicable Statute of Limitations

While the parties disagree on the length of the statute of limitations, there is no dispute about its source. The deadline for filing actions under the Fair Labor Standards Act ("FLSA") is governed by 29 U.S.C. § 255(a), which provides for a two-tiered limitations period, depending on the "willfulness" of the violation:

> Any action . . . [for] unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255. MBUSI asserts that the ordinary two-year period should apply rather than the three-year period for willful violations, and gives two reasons in support. First, MBUSI argues that the three-year period was waived by Plaintiffs' failure to plead willfulness. Second, that Plantiffs have failed to satisfy their burden of proving willfulness.

### 1. Failure To Plead Willfulness

MBUSI's brief contends that "Plaintiffs' failure to allege willfulness bars any such claim." (Doc. 102 at 10.) It goes on to state that both the complaint and amended complaint are "totally devoid of any allegation of willfulness, and their Complaint and

First Amended Complaint do not even contain the term willful." (*Id.*) Plaintiffs do not dispute this fact; instead, they counter that their general request for "any and all relief that the Court deems just and proper" would necessarily include seeking the three-year statute of limitations. (Doc. 118 at 9-10.)

While accepting MBUSI's argument would be decisive, the Court cannot help but notice the scant support offered for it. As the moving party, MBUSI "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. The only basis offered by MBUSI—other than generic citations to *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—is a single case from the Southern District of Florida, *Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d. 1331, 1335 (S.D. Fla. 2008). *Cohen* is the only case cited, in either MBUSI's original brief (Doc. 102 at 11) or reply brief (Doc. 130 at 7), for the proposition that willfulness, to be established, must first be alleged in the complaint. *Cohen* is not, however, binding on this Court; even if it were, its holding is not what MBUSI maintains it to be.

The court in *Cohen* was ruling on a motion for court-ordered notice to the members of a potential class of opt-in plaintiffs, a scenario which has not materialized in the present case. To the extent that *Cohen* discusses willfulness at all, it merely

posits that a conclusory allegation of willfulness in a complaint is not sufficient to justify court-ordered notice to a group of potential plaintiffs "extend[ing] beyond the two-year statute of limitations." *Cohen,* 554 F. Supp. 2d. at 1335. There is no mention of a general requirement to plead willfulness in order to be eligible for the three-year limitations period.

Nor does the limitations statute seem to contemplate such a rule.  It does not requires that a cause of action be *pleaded as* a willful violation; rather, it simply provides that an FLSA cause of action "*arising out of* a willful violation" may be brought within the more lenient three-year limit. 29 U.S.C. § 255(a) (emphasis added). MBUSI has failed to inform the Court of an adequate basis for disallowing the three-year period because willfulness was not pleaded, and it is not the Court's role to provide one. Accordingly, MBUSI's first argument for excluding the three-year statute of limitations fails.

### 2. Failure to Prove Willfulness

While it may not be necessary to *plead* willfulness, the Plaintiffs "do not dispute that they bear the ultimate burden of *proving* that Mercedes 'willfully' violated provisions of the FLSA." (Doc. 118 at 5, emphasis added.) The parties agree that Plaintiffs have the burden of proving willfulness, but disagree about whom it must be

proven to. The statute itself is silent as to whether willfulness can be determined by the Court, or is solely the province of the jury.

The answer in this circuit is less than clear, notwithstanding the Plaintiffs' recital of other circuits' law, and their citation to *Rodriquez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008), for the proposition that it is solely a "fact determination for the jury to decide and not appropriate for summary judgment." (Doc 118 at 5.) Plaintiffs overlook that *Rodriquez* merely assumed, rather than decided, that willfulness is a question for the jury. Nor is it the only case to do so. *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280-83 (11th Cir. 2008.) *Rodriquez* makes this assumption, that determining willfulness is a question for the jury, because the determination had *already been made* by a jury, and was not the subject of review by the court. This is made explicit by a decision apparently written just a day after *Rodriquez*:

> We have been unable to find an FLSA decision of this Court squarely holding that the decision about whether the employer acted willfully for purposes of determining the statute of limitations period is to be decided by the jury. In the district court, the court and the parties assumed that the jury was to decide willfulness, and the parties have assumed that in their briefs and arguments to us. So, we assume it too.

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 n.3 (11th Cir. 2008).[6] While still not "squarely holding" on the issue, the closest thing to reaching the question seems to come from *Allen v. Board of Public Education*, which states that "the determination of willfulness is 'a mixed question of law and fact.'" 495 F.3d 1306, 1324 (11th Cir. 2007) (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003)). Also worth noting is the Supreme Court's observation that deciding whether a violation is "willful" is a "determination [] for the District Court to make." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.14 (1988). And as Defendants point out, other courts within our district have found it proper to judicially determine willfulness at the summary judgment stage. *See Saxton v. Young*, 479 F. Supp. 2d 1243, 1253-54 (N.D. Ala. 2007) (Proctor, J.). But even if Plaintiffs were correct that determining willfulness presents a question of fact for the jury, this would not automatically insulate it from consideration here. To survive summary judgment, it is not enough that a question is factual in nature; there must be a *genuine* issue of *material fact*. If the nonmoving party fails to present evidence that creates a

---

[6]While the publication date of January 9, 2008 for *Alvarez Perez* predates the March 6, 2008 date for *Rodriguez*, the *Alvarez Perez* opinion refers to *Rodriquez* as "our decision yesterday in another FLSA overtime wages case." 515 F.3d at 1163.

genuine question, even on an admittedly factual issue, summary judgment is nonetheless appropriate.

Plaintiffs concede that they did "not put forth any evidence [of willfulness] prior to [their] opposition" to the motion for summary judgment. (Doc. 118 at 6.) They go on to note—correctly—that they are "not required to do so." (*Id.*) The requirement to set forth evidence, by affidavit or otherwise, arises when responding to a summary judgment motion, and not before. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996). The Court therefore looks primarily to Plaintiff's response, and the evidence submitted with it, to determine whether there is a genuine issue of material fact on the question of whether MBUSI willfully violated the FLSA.

The term "willful violation" is not explained by the FLSA itself, but a definition has been established by the Supreme Court and codified in the regulations. A violation is willful if an "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). *See also* 5 C.F.R. § 551.104 ("*Willful violation* means a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act."). It is the second aspect of these definitions, "reckless disregard," that Plaintiffs rely

upon. Like "willful violation," the term "reckless disregard" is also defined in § 551.104, as the "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]."

Plaintiffs contend that MBUSI has failed to make adequate inquiry by "not conduct[ing] any objective analysis as to the actual duties that GLs perform on a day to day basis," and "never inquir[ing] into the actual and performed duties of [its] GLs." (Doc. 118 at 7.) In support, Plaintiffs point to an alleged lack of "time studies," "surveys," "occupational studies," or "interviews" conducted by MBUSI in an effort to learn about the GLs' actual job duties. (*Id.* at 7-8.)

The only case that Plaintiffs offer in support of their argument is *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280-82 (11th Cir. 2008). Although the posture of *Morgan* is quite different from the present situation, a comparison is still instructive. In *Morgan*, the Eleventh Circuit held that a jury's finding of willfulness was supported by the testimony of Family Dollar's own executives. *Id.* at 1280-81. Company executives admitted at trial that Family Dollar had "never studied whether the store managers were exempt," they "had no idea who made [the] policy" that treated them as exempt, and they "knew that the store managers spent most of their time performing manual, not managerial, tasks," among other things. *Id.* at 1280. The

present case stands in sharp contrast. Plaintiffs have presented no evidence from MBUSI executives, by deposition or otherwise, admitting to the Plaintiffs' allegations. There is nothing at all like the testimony in *Morgan* in the present case. On the contrary, the only testimony from an MBUSI representative that Plaintiffs can point to is the deposition of Peter Schwartz, who describes the efforts which went into developing the job description for GLs, and the decision to classify them—consistent with industry standards—as exempt under the FLSA. Plaintiffs do not allege that any complaints were ever made to MBUSI about this policy, or that it otherwise would or should have known that its GLs duties were not what it supposed them to be.

Although Plaintiffs repeatedly accuse MBUSI of failing to make the "inquiry" required by the definition of "reckless disregard," they themselves seem to misapprehend the proper object of that inquiry. Plaintiffs allege that MBUSI failed to inquire into the *job duties* of GLs, but what the definition requires is an inquiry into the *employer's own conduct*, and whether it "is in compliance with the Act." 5 C.F.R. § 551.104. Awareness of its employees' duties is doubtless a part of that puzzle, but is far from constituting the whole thing. It is conceivable that an employer could evaluate its compliance with the FLSA without needing to make separate "inquiries" into its employees' duties (if, for example, it was already well acquainted

with them); it is also possible for an employer to make detailed inquiries into its employees conduct while still failing to adequately examine its compliance with the FLSA. Inquiring into GL job duties and FLSA compliance are two related but separate inquiries which Plaintiffs appear to conflate.  As such, even if Plaintiffs' entire assertion that MBUSI "never inquired into the actual and performed duties of [its] GLs" is assumed to be true, this would not necessarily provide a basis for finding reckless disregard.

The Court cannot, however, simply assume that Plaintiffs' allegations are true. As the non-moving party, all the evidence must, of course, be viewed in the light most favorable to them, with any inferences drawn in Plaintiffs' favor. But the Court can only draw "reasonable inferences." *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999). Moreover, inferences cannot rest solely on the parties' arguments, since "[s]tatements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists."  *Helmich v. Kennedy*, 796 F.2d. 1441, 1443 (11th Cir. 1986). Instead, the Court can rely only on facts which are properly supported by the evidence, and "set forth by affidavit or otherwise." *Lewis*, 518 U.S. at 358. The Court therefore examines the evidence submitted with Plaintiffs' response to the motion.

Attached to the Plaintiffs' response are two exhibits. They are nearly-identical sworn statements from two of the Plaintiffs: Toby Hicks[7] and Gralyn Lawson.[8] With only slight variations, they both assert what Plaintiffs allege in their brief: that MBUSI "never inquired into the actual and performed day to day duties of GLs." (Doc. 118-2 ¶ 10, Doc. 118-3 ¶ 11.) Such assertions would indeed help to support Plaintiffs' argument, if only the two affiants had a sufficient foundation for making them. But it is well established that a witness can only testify as to what he or she actually knows. *See* FED. R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). This principle holds equally true at the stage of summary judgment as it does at trial. *See Echaide v. Confederation of Canada Life Ins.*, 459 F.2d 1377, 1381 n.5 (5th Cir. 1972)[9] ("FED.R.CIV.P. 56(e), of course, requires that affidavits be based on personal knowledge and contain only such evidence as would be admissible at a

---

[7]While Toby Hicks is the named plaintiff in an associated case, 7:08-cv-0536-LSC, and represented by the same counsel, he is not part of the *Lawson* case which Plaintiffs originally belonged to, let alone a subject of the present summary judgment motion.

[8]Interestingly, while Plaintiffs' only exhibits are affidavits from two of the Plaintiffs, they protest that MBUSI "fails to put forth un-biased evidence" and "tells a fantastic one-sided story" by relying on the evidence of its own expert. (Doc. 118 at 9.)

[9] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

trial."); *see also* FED. R. CIV. P. 56 (c)(2) (providing that a party may object to summary judgment materials that would not be admissible in evidence).

This does not mean that the source of an affiant's knowledge always needs external corroboration, since "evidence to prove personal knowledge may. . . consist of the witness' own testimony." FED. R. EVID. 602. Some of the statements made by Hicks and Lawson are self-sufficient in this regard, and refer to conduct that they would have personally observed. For example, Hicks asserts that "Mercedes has never sought surveys *from me* to determine what tasks I actually performed." (Doc. 118-2 ¶ 8, emphasis added.) Lawson makes a similar claim. (Doc. 118-3 ¶ 9.) But the assertions that MBUSI never observed their conduct through other means, or inquired into the duties of other GLs, would require knowledge beyond their ability to observe. Yet neither Hicks nor Lawson claim to have received such information from MBUSI or another knowledgeable source. Rather, the only basis for their assertions is oft-repeated mantra, "[i]t is my belief and knowledge that . . . ." (Doc. 118-2 ¶¶ 8, 9, 10, 11; Doc. 118-3 ¶¶ 10, 11, 12.) Accepting Hicks' and Lawson's testimony on this basis would require them to be omniscient, something else which neither of them claim.

To the extent that their two statements are supported by personal knowledge, the Court accepts them as established. For the purposes of this motion, the Court

expressly finds that MBUSI never sought surveys from Hicks or Lawson, or conducted interviews with them to determine their actual job duties. The Court also finds that Hicks and Lawson never observed any efforts by MBUSI to otherwise make such inquiries. Yet the Court cannot reasonably infer from this that MBUSI made *no* efforts to learn how GLs actually spent their time, much less extrapolate that it did not otherwise have such knowledge. Nor would it be reasonable to go even further, and infer from this that MBUSI failed to make adequate inquiry into whether its conduct was in compliance with the FLSA. As such, Plaintiffs have failed to show that there is a genuine issue of material fact, and the Court finds that no reasonable jury could conclude, from the evidence presented, that any violation of the FLSA in categorizing GLs as exempt was "willful." Accordingly, the appropriate statute of limitations is the two-year period set forth in 29 U.S.C. § 255(a).

## B. Application of the Statute of Limitations

The only remaining question is how the two-year statute of limitations is to be applied to these four Plaintiffs. Here again, the parties' disagreement is twofold: they dispute when the statute of limitations begins to run, and when an FLSA action is deemed to be commenced.

### 1. Beginning of the Limitations Period

The first disagreement concerns only two of the Plaintiffs. Because Jones and Kirkley were GLs at the time they left MBUSI, there is no time difference between the end of their jobs as GLs and the end of their employment with MBUSI. Lawson and Pitman, on the other hand, were promoted from GL to other positions prior to leaving the company. With regard to these two, Plaintiffs argue that MBUSI violated the FLSA with each payday that they were employed by MBUSI, even after they ceased to be GLs, contending that "the fact that they left the GL position at an early date is inconsequential." (Doc. 118 at 13 n. 2.) The only case they cite for this assertion, *Knight v. City of Columbus*, 19 F.3d 579 (11th Cir. 1994), not only fails to support their argument, but refutes it.

The court in *Knight* explains that Plaintiffs' continuing violation theory "is something of a misnomer," and obscures the actual nature of the violations:

> The term "continuing violation" also implies that there is but one incessant violation and that the plaintiffs should be able to recover for the entire duration of the violation, without regard to the fact that it began outside the statute of limitations window. That is not the case. Instead of one on-going violation, this case involves a series of repeated violations of an identical nature. Because each violation gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event.

*Id.* at 582. As in *Knight*, this case involves an alleged "series of repeated violations of an identical nature," i.e., the failure to pay GLs for overtime, with "each failure to pay overtime constitut[ing] a *new* violation of the FLSA." *Id.* at 581. This understanding of the rule was well established even before *Knight* was decided. *See, e.g.*, *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973) ("It is well settled that 'A separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed.'") (internal quotations omitted). The two-year statute of limitations for each alleged violation began to run from the payday in which there was a failure to pay for overtime. The last of these alleged failures, then, coincided with the last paycheck received for work as a GL, with any further employment with MBUSI being immaterial.

## 2. Commencing of an FLSA Action

The crux of the parties' dispute about the commencing of an action is whether the complaint or the consent-to-sue letter is the operative event. According to MBUSI, the date that the Plaintiffs "filed the Consent is when the action was deemed to have been commenced, and the two year statute of limitations runs backwards from that date." (Doc. 102 at 9.) Plaintiffs take the position that "as a result of the

procedural nature of this case, the date when this action was commenced is the date when Plaintiffs filed the complaint." (Doc. 118 at 12.)

The law in this area is relatively straightforward; the only complication comes from the question of whether this case is a "collective or class action." 29 U.S.C. § 256. Any doubts on that score have been put to rest by the Court's recent Order severing the *Lawson* Plaintiffs. (Doc. 162.) Whatever the Plaintiffs' original intentions in filing this action, no attempt has been made to certify a class. Nor have any of the Plaintiffs opted in later under the collective provisions of 29 U.S.C. § 216(b). Rather, as Plaintiffs themselves put it, "this is a consolidated case where all one-hundred-plus Plaintiffs are named plaintiffs and have filed suit on their own behalf." (Doc. 118 at 11.) Not only did Plaintiffs bring suit only in their own name, they now have their own individual cases as well. Their cases are consolidated, *not* collective.

As such, the consent-to-sue letters have no bearing on the analysis here; their purpose is to ensure that members of a class or collective action are ascertainable and consent to participation. *See Yang v. Am. Intern. Knitters Corp.*,  789 F.Supp. 1074, 1080-81 (D.N. Mar. I. 1992), *Deley v. Atlantic Box & Lumber Corp.*,119 F.Supp. 727, 728 (N.J. 1954). *See also Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir. 1984) ("It is clear that a plaintiff does not need to file a written consent if an individual

action is maintained. He or she is the named plaintiff.") As it relates to the statute of limitations, the statute itself is clear: where a case is not maintained as a "collective or class action" under the FLSA, it "shall be considered to be commenced on the date when the complaint is filed." 29 U.S.C. § 256. The Court therefore looks to the date of the complaint. For Lawson and Pitman, who appeared in the original complaint, the relevant date is June 10, 2009. For Kirkley and Jones, who did not appear in the original complaint, the Court looks to the date of the amended complaint in which their names appear: August 20, 2009.

As a result, it appears that none of these four Plaintiffs had an unexpired cause of action at the time that they filed suit; over two years elapsed between their last potential violation and the filing of their complaint. Lawson transferred to Team Relations Specialist on March 5, 2007, over two years before the June 10, 2009 complaint was filed. Pitman became Acting Assistant Manager on September 1, 2006, and was promoted to Assistant Manager on March 1, 2007, also more than two years prior to the complaint. Likewise, Jones left MBUSI in July of 2006, and Kirkley departed on August 3, 2007, both over two years before the amended complaint was filed on August 20, 2009. None of these four Plaintiffs' actions were "commenced

within two years after the cause of action accrued," and they are therefore barred under the plain language of 29 U.S.C. 255(a).

**V. Conclusion.**

Because  David Jones, Michael Kirkley, Gralyn Lawson, and Kelly Pitman all failed to file suit within the statute of limitations, summary judgment is appropriate for their claims. MBUSI's motion as to the applicable statute of limitations (Doc. 103) is GRANTED, and is held to be two years; MBUSI's motion for summary judgment as to the four plaintiffs (Doc. 101) is likewise GRANTED, as all four of the plaintiffs failed to file suit within the requisite time. Separate Orders consistent with this opinion will be entered.

Done this 16th day of February, 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

[167037]